STUART G. GROSS (#251019)
sgross@grosskleinlaw.com
GEORGE A. CROTON (#323766)
gcroton@grosskleinlaw.com
**GROSS & KLEIN LLP**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
t (415) 671-4628
f (415) 480-6688

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### EUREKA DIVISION

| | |
|---|---|
| **FRIENDS OF GUALALA RIVER,** | Case No. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY** |
| v. | **AND INJUNCTIVE RELIEF** |
| **GUALALA REDWOOD TIMBER, LLC,** | |
| Defendant. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ....................................................................................................... I

INTRODUCTION ............................................................................................................... 1

PARTIES ............................................................................................................................. 5

    I.    Plaintiff............................................................................................................... 5

    II.   Defendant .......................................................................................................... 6

JURISDICTION .................................................................................................................. 6

VENUE ................................................................................................................................ 7

INTRADISTRICT ASSIGNMENT .................................................................................... 7

LEGAL BACKGROUND ................................................................................................... 7

FACTUAL BACKGROUND .............................................................................................. 8

    I.    The Little North Fork of the Gualala River and Its Floodplain ........................ 8

    II.   The Logging Project........................................................................................... 9

    III.  The Gualala Listed Animals Endangered by the Proposed Logging ............. 12

        A.   The California Red-Legged Frog .............................................................. 13

        B.   Northern California Steelhead .................................................................. 15

        C.   The Central California Coast Coho Salmon .............................................. 17

CLAIMS FOR RELIEF .................................................................................................... 19

    FIRST CLAIM FOR RELIEF..................................................................................... 19

    SECOND CLAIM FOR RELIEF ................................................................................ 21

    THIRD CLAIM FOR RELIEF ................................................................................... 26

PRAYER FOR RELIEF ................................................................................................... 30

COMPLAINT

Plaintiff Friends of Gualala River ("FOGR") hereby brings this action pursuant to § 9 of the Endangered Species Act ("ESA" or "Act"), and 16 U.S.C. §§ 1533(d), 1538(a)(1)(B) & (G) against Defendant Gualala Redwood Timber, LLC ("GRT"), and alleges on information and belief, except as indicated, as follows:

## **INTRODUCTION**

1.     This action seeks to protect members of three endangered or threatened species who call the Gualala River—including its Little North Fork—and its environs home: California red-legged frogs (occasionally, "CRLF"); Central California Coast coho salmon (occasionally, "CCC Coho" or "coho"); Northern California steelhead (occasionally, "NC Steelhead" or "steelhead") (collectively, the "Gualala Listed Animals").

2.     These animals all depend for their survival on the 251 acres of alluvial floodplains along the Little North Fork of the Gualala River (the "Little North Fork"), where GRT intends to engage in major logging operations. As shown below, the location to be logged consists of non-contiguous logging area on alluvial flats primarily on the Little North Fork of the Gualala River.

/ / /

/ / /

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

COMPLAINT

1



3.      Located in Mendocino County, just hours from the Bay Area, the Little North Fork is an oasis for the Gualala Listed Animals and numerous other animals, insects, and plants.

4.      The Little North Fork and associated tributaries of the Gualala River contain extensive alluvial floodplains with mature redwood and other riparian ecosystems. This type of

COMPLAINT

forest is exceedingly rare in the area and more generally. It is also essential habitat for the Gualala Listed Animals.

 

5.     Accordingly, GRT's plan to log this ecologically important forest is reasonably certain to kill, harm, and/or harass the Gualala Listed Animals that inhabit the area. GRT intends to cut mature 100-year-old stands of trees in the floodplain, thereby modifying and degrading the habitat for the Gualala Listed Animals, and thus will directly harm and/or harass them. The impacts of the proposed logging operations are, moreover, reasonably certain to continue to kill, harm, and/or harass the Gualala Listed Animals in the future. To prevent these consequences, the proposed logging operations must be enjoined and, in the event that the operations are not enjoined, GRT must be ordered to take affirmative mitigation measures, in order to prevent further impacts from the proposed logging that will otherwise continue after the planned logging operations are completed, and that are reasonably certain to continue to kill, harm, and/or harass the Gualala Listed Animals in the future.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

COMPLAINT

6.      In ESA § 9 parlance, GRT's proposed logging is reasonably certain to result in the "take" of these animals. GRT is reasonably certain to cause direct take through such means as the crushing of California red-legged frogs that inhabit the forest floor over which GRT's heavy equipment will operate and onto which GRT will land enormous felled trees. GRT is also reasonably certain to cause indirect take through habitat modification that significantly impairs essential behavioral patterns—including breeding, spawning, incubating, rearing, migrating, feeding, or sheltering—through means such as the increased sedimentation in spawning and incubation gravels that steelhead and coho need for their survival.

7.      GRT is aware of these facts, which have been brought to its attention numerous times. However, GRT has not sought an incidental take permit from National Marine Fisheries Service ("NMFS")—which has jurisdiction over the steelhead and coho—or from the United States Fish & Wildlife Service ("USFWS")—which has jurisdiction over the California red-legged frogs.

8.      Any such incidental take permit would have required that GRT adopt measures for minimizing the take of these animals to the greatest extent practicable, as well as develop a plan that would help facilitate their recovery.

9.      GRT's proposed logging operations violate the ESA. Unless and until GRT applies for and receives an incidental take permit for each of the Gualala Listed Animals, any logging operations in areas adjacent to the Little North Fork of the Gualala River floodplain are illegal and must be enjoined to prevent the threatened and endangered animals from being killed, harmed, harassed, and otherwise "taken" in violation of the ESA.

10.     Unless this Court grants the relief request herein, take of the Gualala Listed Animals is reasonably certain to occur.

11.     Plaintiff alleges herein all violations which will occur prior to trial, but for which data may not have been available to Plaintiff prior to the filing of this Complaint.

12.     Plaintiff respectfully requests that the Court issue an injunction requiring GRT to prevent and/or mitigate the detriment that it will cause to the Gualala Listed Animals through

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

COMPLAINT

direct harm and the future destruction of their critical habitat, and to protect these imperiled animals in accordance with ESA.

**PARTIES**

**I.** **Plaintiff**

13. Plaintiff **FRIENDS OF GUALALA RIVER** ("FoGR") is a non-profit, public interest corporation formed to protect the Gualala River Watershed and the species that rely on it. FoGR was formed in 1992 by a group of local residents in response to timber harvesting near a popular, heavily wooded campground on the north bank of the river. Since then, the organization has provided concerned citizens a forum to share common concerns and research regarding the welfare of the Gualala River, its estuary, its watershed, and habitat. FoGR's members and staff include individuals with educational, scientific, spiritual, recreational, and other interests in the protection of natural resources and species that inhabit the Gualala River and its environs, including the Gualala Listed Animals. FoGR's members and staff visit the Gualala River and its environs and enjoy the biological, recreational, and aesthetic values of the area—where the California red-legged frog, Northern California steelhead, and Central California coho salmon live—and FoGR's members and staff plan to visit and enjoy the Gualala River and its environs in future. A critical component of the aesthetic, recreational, and spiritual enjoyment that FoGR's members and staff gain from visiting the Gualala River and its environs is viewing, listening, searching for, and communing with the threatened and endangered animals that make the area home, including the Gualala Listed Animals. That aesthetic, recreational, and spiritual enjoyment will be diminished by GRT's planned logging activities, which will cause those same animals to be harmed, killed, harassed, or their habitat modified in a way that harms their essential behaviors. FoGR's members and staff have participated for years in efforts to protect and preserve the habitat in the Gualala River watershed that is essential to the continued survival of these species.

14. FoGR brings this action on its own behalf and on behalf of its adversely affected members and staff. It sues on behalf of itself and its members who have concrete interests in the aesthetic, recreational, and spiritual enjoyment and protection of California's wild areas,

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

including the Gualala River and its environs, and fish and wildlife species at self-perpetuating population levels, in the protection of our environment, and in the protection of water and air quality.

15.     Plaintiff complied with all procedural requirements, including the sending of a Notice of Intent to Sue, on November 15, 2021, to GRT, NMFS, USFWS, the U.S. Secretary of the Interior, the U.S. Secretary of Commerce, the California Department of Forestry and Fire Protection ("CalFire"), and the State of California. The Notice of Intent to Sue detailed the violations of the ESA detailed herein and invited GRT to confer with Plaintiff regarding them. GRT did not take action on that invitation.

**II.     Defendant**

16.     Defendant **GUALALA REDWOOD TIMBER, LLC** ("GRT") is a California limited liability company with its principal place of business in Santa Clara County, California. GRT owns the timber and timberland that is being logged.

17.     GRT filed a Timber Harvesting Plan, No. 1-18-095 MEN ("Little THP") for the proposed logging along the Little North Fork of the Gualala River. CalFire approved the Little THP on September 23, 2021. In the Little THP, GRT states that a licensed timber operator ("LTO"), which will actually carry out the logging on behalf of GRT, is responsible for erosion control until the work completion report has been approved by the director. After that occurs, GRT will be responsible for erosion control.

**JURISDICTION**

18.     This Court has jurisdiction over this action pursuant to the ESA citizen-suit provision, 16 U.S.C. § 1540(g), which also empowers the Court to enjoin Defendant from further violations of the ESA and its implementing regulations, id. § 1540(g)(1)(A). The logging operations proposed in the Little THP are reasonably certain to create various impacts that will cause immediate and future illegal take of the endangered and threatened species in violation of Section 9 of the ESA.

19.     As required by 16 U.S.C. § 1540(g)(2)(A)(i), Plaintiff provided Defendant with formal notice of the violations embodied in this complaint. FoGR submitted a notice of intent to

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

COMPLAINT

1    sue by letter dated November 15, 2021 to GRT's owner, managing agents, registered agent, and

2    the appropriate heads of agencies.

3    **VENUE**

4    20.    Venue in this district is proper under 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. §

5    1391(b)(2).

6    **INTRADISTRICT ASSIGNMENT**

7    21.    This action substantially arises out of actions planned to be taken in the county of

8    Mendocino. Thus, under Civil L.R. 3-2(d) this action is to be assigned to the Eureka Division.

9    **LEGAL BACKGROUND**

10    22.    Section 9 of the ESA prohibits the "take" of endangered or threatened species.

11    16 U.S.C. § 1538(a)(1)(B). The term "take" is defined in the "broadest possible manner to include

12    every conceivable way" in which a person could harm or kill fish or wildlife. S. Rep. No. 307,

13    93rd Cong., 1st Sess. 1, reprinted in 1973 U.S. Code Cong. & Admin. News 2989, 2995.

14    Accordingly, the ESA defines "take" as "to harass, harm, pursue, hunt, shoot, wound, kill, trap,

15    capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532 (19).

16    23.    NMFS has further defined the term "harm" to include "significant habitat

17    modification or degradation which actually kills or injures fish or wildlife by significantly

18    impairing essential behavioral patterns, including breeding, spawning, rearing, migrating, feeding

19    or sheltering." 50 C.F.R. § 222.102; *see also Babbitt v. Sweet Home Chapter of Communities for*

20    *a Great Oregon*, 515 U.S. 687, 701 (1995) (upholding functionally indistinguishable USFWS

21    regulatory definition).

22    24.    While NMFS has not promulgated a regulatory definition of "harass," USFWS

23    regulations define "harass" as "an intentional or negligent act or omission which creates the

24    likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal

25    behavioral patterns which include, but are not limited to, breeding, feeding or sheltering." 50

26    C.F.R. § 17.3.

27    25.    ESA sections 9(a)(1)(B) and (G) prohibit any "take" of listed species that is not

28    authorized by an incidental take permit (issued under section 10 of the Act) or an incidental take

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

COMPLAINT

statement (issued under section 7 of the Act) issued by NMFS or USFWS. *See* 16 U.S.C. § 1539; 50 C.F.R. Parts 13, 17, & 222. Unauthorized activities that significantly degrade habitat in ways that impair the spawning, rearing, migrating, sheltering, feeding, or other essential behavioral patterns of the listed species are therefore illegal.

26.     To avoid liability under the ESA, one may obtain an incidental take permit under ESA section 10. 16 U.S.C. § 1539(a)(1)(B). To receive a permit to take any of the Listed Species pursuant to an ITP, one must, among other requirements, adopt measures for minimizing the take to the greatest extent practicable, as well as develop a plan that "conserv[es]" – i.e., helps facilitate the recovery of – the Listed Species. *Id.* §§ 1539(a)(1)(B), (a)(2)(A); *Sierra Club v. U.S. Fish and Wildlife Serv.*, 245 F.3d 434, 441-42 (5th Cir. 2001) ("'[c]onservation' is a much broader concept than mere survival" because the "ESA's definition of 'conservation' *speaks to the recovery of a threatened or endangered species*") (emphasis added). This plan, called a Habitat Conservation Plan must delineate "the impact which will likely result from such taking" and the "steps [you] will take to minimize and mitigate such impacts …." 16 U.S.C. § 1539(a)(2)(A).

## FACTUAL BACKGROUND

### I.     The Little North Fork of the Gualala River and Its Floodplain

27.     The Gualala River enters the Pacific Ocean approximately 100 miles north of San Francisco, marking the border of Mendocino and Sonoma Counties. The Gualala River watershed encompasses a 740-mile stream network that flows through 191,000 acres of woodlands, grasslands, and wetlands.

28.     The main stem of the Gualala River is designated as a Wild and Scenic River by the State of California for its natural beauty and recreational value. The Gualala River is characterized by its anadromous salmonids and its extensive freshwater habitat. The Gualala River has been designated as "Critical Habitat" under the ESA for the threatened Northern California steelhead, and is also home to the endangered Central California Coast coho salmon.

29.     The Little THP is located along the Little North Fork of the Gualala River, which lies upslope and northeast of the main stem of the river and occupies a northwest trending rift

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

valley of the active San Andreas fault. The broad floodplain of the Little North Fork of the

Gualala River is home to a mature redwood ecosystem that includes ancient old-growth

redwoods, as well as giant redwoods and Douglas-firs that tower over the river and its floodplain.

It is the latter trees that GRT intends to cut under the Little THP.



## II.     The Logging Project

30.     GRT plans to log areas within and adjacent to the floodplain of the Little North

Fork of the Gualala River located in Mendocino County, California near the town of Gualala.

31.     Specifically, GRT plans to log 199 non-contiguous acres, and to conduct timber

operations in an additional 52 acres, within and adjacent to alluvial flats of the Little North Fork

of the Gualala River. The area that GRT intends to log is near latitude 38.7910214°, longitude

123.5100091°.

32.     The location of the logging operations is identified further in the Little THP,

approved by the California Department of Forestry and Fire Protection on September 23, 2021.

Timber operations will occur in six Sections located in Township 11N and Range R15W, all

located within Mendocino County. THP § I, p. 3. The logging operations will take place in two

planning watersheds: Doty, and Robinson Creek. *Id.* at 3.

33.     The location of the logging operations contains a mature redwood forest ecosystem along the Little North Fork of the Gualala River. The location of the logging operations contains some of the last remaining mature floodplain redwood forest in the area.

34.     Elevations within the location of the logging operations range from 40 feet to 440 feet, and most of the location of the logging operations is considered a flood-prone area. Seasonal wetlands occur in poorly drained flats, swales, relict overflow channels, and in old skid road track depressions in the floodplain where logging is planned.

35.     Due to its location in an alluvial floodplain along the Little North Fork of the Gualala River and its tributaries, the location of the logging operations contains extensive riparian ecosystems. Most of the ground in this area is wet or moist during most or all of the year. The Little North Fork of the Gualala River ecosystem and the Gualala Listed Animals that use the location of the logging operations have suffered from over a century of extractive resource use. Extensive logging and road-building practices since the 1860s have produced significant erosion, producing a legacy of increased sediment loads severely impacting aquatic habitat in the Gualala River and its tributaries.

36.     The forested floodplain along the Little North Fork of the Gualala River that contains the location of the proposed logging operations was mostly clear cut at the turn of the 20th century. Portions of the area have been harvested since then.

37.     In 1993, the USEPA listed the Gualala River watershed on the Clean Water Act §303(d) list of impaired water bodies due to declines in anadromous salmonids from excessive sedimentation. The §303(d) listing was updated in 2003, and water temperatures in much of the basin are now impaired as well, with exception of Little North Fork. Cold freshwater habitat is essential for fish migration and spawning, making the Little North Fork a critical refugia as well as cold water source for downstream portions of the watershed. Logging operations have removed large streamside trees that previously provided temperature reducing shade, and reduced the amount of large woody debris that previously created deep pools of cool, low-velocity water which are essential components of steelhead and coho habitat.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

38.     The area that GRT will log is within the riparian zone of the Little North Fork of the Gualala River, which has already been listed under §303(d) for high sediment. Felling and yarding trees involving heavy equipment are proposed to occur on the floodplain in close proximity and potentially directly within floodplain wetland and riparian habitats known to be of importance for these listed species.  Logging roads used to haul the felled timber are adjacent to, cross, and are hydrologically connected with floodplain wetlands and streams at various locations.

39.     Past timber operations along the Little North Fork of the Gualala River have caused substantial, long-term, persistent, and effectively irreversible direct and indirect impacts to the ecosystem, including to the sensitive riparian redwood understory vegetation present at the location of the proposed logging. The proposed logging operations will likewise cause continuing substantial, long-term, persistent, and effectively irreversible direct and indirect impacts to the ecosystem. The recovery time required by shade-adapted understory vegetation following logging disturbances is reasonably certain to take many decades and lag behind the regeneration of mature redwood forest overstory structure.

40.     Despite GRT's characterization of the proposed logging operations as a "very light harvest" (THP § IV, p. 126, 154), it will involve cutting and felling large trees; the use of heavy equipment in floodplain areas; skidding harvested trees; hauling harvested trees; slash removal and stockpiling; drafting 10,000 gallons of water per day from four locations in the Little North Fork, North Fork, and South Fork watersheds of the Gualala River; and road reconstruction and maintenance. These logging activities will cause immediate and ongoing disturbances to the biotic and abiotic elements of the location of the logging operations and nearby areas.

41.     Ongoing disturbances that will persist after the proposed logging operations include the removal of mature redwood trees, thereby altering forest structures; compaction and erosion of alluvial soils; damage to sensitive understory vegetation; impairment of waterways in the Little North Fork and lower Gualala River watershed, including, without limitation, by increasing water temperature and sedimentation; and the short- and long-term disruption of species migration and prey availability.

COMPLAINT

1   42. This rare ecosystem provides essential habitat for the Gualala Listed Animals.

2   43. As described herein, GRT's proposed logging operations will impose significant

3 impacts on the Gualala Listed Animals. These impacts will both directly take these animals

4 through logging activities and indirectly take them through substantial modification of their

5 habitat that impairs the spawning, incubating, rearing, migrating, sheltering, feeding, and/or other

6 essential behavioral patterns. If the logging is allowed, these impacts will continue to occur far

7 into the future absent affirmative exceptional efforts to mitigate the harm caused by the logging

8 operations.

9 **III.** **The Gualala Listed Animals Endangered by the Proposed Logging**

10   44. The Gualala River, itself, and its tributaries, including the Little North Fork,

11 provide irreplaceable habitat for numerous fishes, birds, amphibians, reptiles, invertebrates, and

12 mammals, including each of the Gualala Listed Animals.

13   45. GRT has not applied for or received an incidental take permit with regards to the

14 Little THP for any of the Gualala Listed Animals.

15   46. If the proposed logging operations are allowed to proceed without an incidental

16 take permit, GRT is reasonably certain to cause direct and indirect take of each of the Gualala

17 Listed Animals.

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

Gross & Klein LLP
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111

**A.**   **The California Red-Legged Frog**

47.   USFWS listed the California red-legged frog ("CRLF") as a threatened species under the ESA in 1996. 61 Fed. Reg. 25813 (May 23, 1996). A species qualifies as "threatened" if it is "likely to become an endangered species within the foreseeable future through all or a significant portion of its range." 16 U.S.C. § 1532 (20).



48.   The range of the CRLF includes Mendocino and Sonoma Counties, and thus the alluvial floodplains in the Gualala River watershed, including the Little North Fork of the Gualala River. *See* 75 Fed. Reg. 12815.

49.   eDNA sampling conducted in December 2020 detected CRLF DNA in three locations in the locations in the Gualala River, including at the mouth of the North Fork of the Gualala River, into which the Little North Fork flows.

50.   CRLFs are known to live in the floodplain and upland habitat near the location of the proposed logging. And the THP for the proposed logging acknowledges the presence of the CRLF "adjacent" to the area of the proposed logging.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

51.     According to the USFWS' 2002 Recovery Plan for the species, CRLF "requires a variety of habitat elements with aquatic breeding areas embedded within a matrix of riparian and upland dispersal habitats . . . [including] pools and backwaters within streams and creeks, ponds, marshes, springs, sag ponds, dune ponds and lagoons."

52.     CRLFs mate and lay eggs in waterways or nearby riparian areas, including ephemeral drainages or wetlands; and mature frogs forage and disperse in both riparian and upland habitats.

53.     CRLF have a variety of migration patterns. Some CRLFs move along well-established corridors that provide specific sensory cues to guide movement. Many other long-distance migrating CRLF travel to and from breeding sites during the rainy season and move overland in relatively straight lines toward target sites.

54.     CRLF leave breeding habitat at various times throughout the rainy season. In one radio-telemetry study in Marin County, 66 percent of female frogs and 25 percent of male frogs moved to non-breeding areas even when the breeding site retained water.

55.     CRLF also leave breeding sites in the dry season to aestivate in upland refugia. For example, in Alameda Creek in September a radio-tagged male frog spent three weeks in a burrow 433 feet away from the water before returning to the stream channel.

56.     CRLF terrestrial habitats include mammal burrows, leaf litter, and under shrubs. CRLFs are, thus, susceptible to the harms of vegetation removal and physical disturbance to the landscape, compaction of soils, and loss of underground burrow networks.

57.     Diet analyses indicate the importance to CRLF of terrestrially derived prey. Stable carbon isotopes in frog tissue confirmed that dominant prey items include a mix of terrestrial carnivores (e.g., spiders, beetles, wasps) and detritivores (e.g., worms, ants). Small frogs are largely insectivorous, and although large adult frogs can consume aquatic vertebrates in the wet season, they consume terrestrial vertebrates in the dry season.

58.     CRLF are known to live in the floodplain and upland habitat near the Site, and the Little THP acknowledges that CRLF live within the site.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

**B.**     **Northern California Steelhead**

59.     The evolutionarily significant unit ("ESU")[1] of steelhead, a type of salmonid, known as the Northern California steelhead has been listed as a threatened species under the ESA since 2006. 50 C.F.R. § 223.102(e); 71 Fed. Reg. 834 (Jan. 5, 2006) (designating as "threatened" all naturally spawned populations of steelhead in California coastal river basins from Redwood Creek southward to the Russian River, which includes the Gualala River watershed). Thus, naturally spawned NC steelhead within the Gualala River watershed, including the location of the proposed logging, are protected under the ESA.



60.     The Gualala River watershed, including the location of the proposed logging, is also designated as Critical Habitat for NC steelhead. 50 C.F.R. § 226.211. ESA § 3(5)(A), 16 U.S.C. § 1532(5)(A), in its relevant section defines "critical habitat" of a threatened or endangered species as "(i) the specific areas within the geographical area occupied by the species . . . on which are found those ***physical or biological features (I) essential to the conservation of the species*** and (II) which may require special management considerations or protection . . . " (emphasis added).  "Conservation" in this context means both survival of the threatened or

_____

[1] "Evolutionarily significant unit" is a term for a population of organisms that is considered distinct for purposes of conservation, including special status designations under the Federal and California Endangered Species Acts.

endangered species as well as its recovery. Thus, the Gualala River watershed is designated as "essential" for the NC steelhead's recovery. *Id.*

61.     Features of NC Steelhead habitat include floodplain connectivity, natural cover, cool clean water, in-stream large woody debris, and high dissolved oxygen concentration.

62.     NMFS has found that "habitat degradation associated with forest practices was a significant contributor to the reduction in abundance and distribution of Northern California steelhead." NMFS Fisheries, Coastal Multispecies Recovery Plan (2016).

63.     NC steelhead are anadromous fish, meaning they spawn and incubate in freshwater but spend some of their lives rearing in the marine environment. In general, steelhead return "home" to their natal environment multiple times during their lives to spawn and lay eggs within meters to kilometers from where they were spawned and hatched. After spawning, eggs typically incubate over winter. Steelhead rely on species-specific availability of appropriately sized streambed substrate for spawning, incubating, and rearing conditions. This often occurs in floodplain habitat near stream margins where groundwater exchange with surface water moderates temperatures and increases oxygen.

64.     In the spring, fry hatch from eggs at which point steelhead may migrate within the watershed. Fry mature into parr, which rely heavily on freshwater and riparian terrestrial insects for food. In California, parr typically remain in freshwater for less than one to up to three years. The timing of steelhead downstream migration to the marine environment depends on environmental conditions. After maturing at sea, steelhead return upriver to reproduce, usually within close proximity to their natal stream reach.

65.     NC steelhead are documented as rearing extensively in lagoonal estuaries in California—such as the downriver portions of the location of the logging operations along the Gualala River—where they may benefit from higher growth rates and ultimately increased survival compared to individuals rearing in upstream habitats. Rearing juvenile NC steelhead are commonly found in the Gualala River estuary.

66.     The dominant land use in the Gualala watershed is logging and road building associated with logging, which are central drivers of salmon population declines. Due to these

and other contributing factors, the Gualala River is currently in violation of federal and California water quality standards for sediment and temperature. NMFS has specifically identified future logging as a threat to NC steelhead recovery on the Gualala River due to "reduced canopy cover resulting in increased stream water temperatures, increased sediment load into adjacent waterways impairing gravel quality in downstream reaches, and significant loss of [large woody debris] recruitment, which is an essential component of habitat complexity, form and function." NMFS, Coastal Multispecies Recovery Plan (2016). The Little THP notes that "large woody debris function in the channel is low throughout the watershed," and that there is already a "general watershed-wide lack of instream habitat complexity." THP § IV, p. 154-55.

**C.** **The Central California Coast Coho Salmon**

67.     NMFS listed the Central California Coast Coho Evolutionary Significant Unit as an endangered species under the ESA in 2005. 70 Fed. Reg. 37160 (June 28, 2005). CCC coho's range spans Punta Gorda to the San Lorenzo River, which includes the Gualala River and its watershed. 50 C.F.R. § 226.210.



68.     Freshwater habitat requirements for CCC coho include access to floodplains, such as the location of the proposed logging, side channels, and low-velocity habitat during high flow events; deep complex pools formed by large woody debris; adequate quantities of water; cool water temperatures, unimpeded passage to spawning grounds and back to the ocean; and adequate quantities of clean spawning gravel. NMFS, Central California Coast Coho Salmon Recovery Plan (2012).

69.     Logging and road construction are major causes of CCC coho habitat degradation. *Id.*

70.     Like steelhead, CCC coho are anadromous fish, meaning they spawn and incubate in freshwater but spend some of their lives rearing in the marine environment.  Upon maturing, coho return to freshwater, commonly laying eggs within meters to kilometers from where they were spawned and hatched. After spawning, eggs typically incubate over winter. CCC coho rely on species-specific availability of appropriately sized streambed substrate for spawning and rearing conditions. This often occurs in floodplain habitat near stream margins where groundwater exchange with surface water lowers temperatures and increases oxygen.

71.     In the spring, fry hatch from eggs at which point coho may migrate within the watershed. Fry mature into parr, which rely heavily on freshwater and riparian terrestrial insects for food. In California, parr typically remain in freshwater for less than one to up to three years. The timing of coho downstream migration to the marine environment depends on environmental conditions. After maturing at sea, adult coho return upriver to reproduce, usually within close proximity to their natal stream reach.

72.     CCC coho are documented rearing extensively in lagoonal estuaries in California—such as the downriver portions of the location of the logging operations, along the Gualala River—where they may benefit from higher growth rates and ultimately increased survival compared to individuals rearing in upstream habitats.

73.     CCC coho have been documented in the Gualala watershed. This includes eDNA sampling conducted in December 2020 through which coho DNA was detected downstream of the location of the proposed logging, and snorkel sampling conducted in 1998, 2002, and 2004

COMPLAINT

18

1    through which juvenile coho were detected in the Little North Fork and two other nearby

2    tributaries to the North Fork Gualala River, Dry Creek, and Robinson Creek.

3                                    **CLAIMS FOR RELIEF**

4                                  **FIRST CLAIM FOR RELIEF**

5          (Violation of § 9 of the ESA – Unauthorized Take of California Red-Legged Frogs)

6          74.    Plaintiff incorporates by reference all the allegations contained in the previous

7    paragraphs as though fully set forth herein.

8          75.    The logging operations are reasonably certain to significantly disrupt and impair

9    essential CRLF behavioral patterns, including movement, migration, breeding, feeding, and

10   sheltering. The forms of habitat modification that are reasonably certain to cause take to CRLF

11   include, but are not limited to: vegetation removal, physical disturbance to the landscape,

12   compaction of soils, and loss of underground burrow networks. Take of the CRLF is reasonably

13   certain to continue to occur because GRT's logging plans will cause this habitat modification.

14         76.    The logging operations are also reasonably certain to cause direct take of CRLF.

15   Tree falling, skidding, logging, trucking, water drafting, road building, and general heavy

16   equipment use are reasonably certain to directly kill, harm, and harass CRLFs.

17         77.    The proposed logging, thus, is reasonably certain to interfere not only with the

18   physical habitat integrity of CRLF and cause take directly, but also affect food resources for

19   CRLF and indirectly cause take in that way.

20         78.    USFWS has delineated a maximum protective buffer limit of 1 mile, with variable

21   minimum distances around aquatic habitats to be determined by locally known dispersal patterns

22   which can be up to 2 miles. 75 Fed. Reg. 12816 (2010). Persistent occupancy of sites by CRLF is

23   especially sensitive to fragmentation by roads. Buffer zones to protect CRLF should provide

24   connectivity among aquatic habitats (i.e., the margins of the river and the various off-channel

25   water bodies and ponds encompassed within the location of the proposed logging).

26         79.    The Little THP indicates that the logging operations have variously implemented

27   30-foot and 300-foot buffer areas to avoid causing take of the CRLF. THP § II, p. 54-55. These

28   buffer lengths are extremely deficient and thus are reasonably certain to result in take.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

COMPLAINT

80.     Without a 1-mile buffer area, the construction of haul roads and skid trails within the location of the logging operations are reasonably certain to disturb dispersal patterns and disrupt migration to and away from breeding sites, causing take of CRLF. The concomitant sedimentation of aquatic breeding habitats from road construction is also reasonably certain to disrupt migration to breeding sites, causing take of CRLF. These impacts are reasonably certain to cause take of the CRLF.

81.     In addition to the proposed logging's substantial modification of CRLF habitat, resulting in indirect take, timber harvesting activities are reasonably certain to result in direct take by killing or injuring individual CRLFs.

82.     CRLFs commonly reside in ground squirrel burrows, as well as other depressions, and thus take are likely to go undetected when the ground is disturbed.

83.     The proposed logging operations will utilize various forms of heavy equipment to remove trees and develop a network of haul roads and skid trails in the location of the proposed logging, including the use of previously abandoned skid trails and haul roads, which now form depressions in which water seasonally collects forming wetland habitat and the construction of water crossings.

84.     It is reasonably certain that the use of such previously abandoned skid trails will result in the direct take of CRLF, crushing the animals under the treads of the equipment.

85.     The proposed logging will further involve the felling of large trees, which are reasonably certain to land in depressions inhabited by CRLF, resulting in their take in the form of death, injury, harassment, and/or other harm.

86.     Water drafting is also proposed at multiple water holes and gravel holes within or near the location of the proposed logging and such water drafting is reasonably certain to result in the take of CRLF.

87.     The Little THP explicitly acknowledges that its proposed logging will result in: "disturbance of animal species in the summer time through logging and trucking activity [and] . . . directly killing certain slow moving or non-mobile plant and animal species through falling, skidding, logging, trucking and road building activities." THP § IV, p. 144.

Gross & Klein LLP
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111

COMPLAINT

88.     This includes CLRF. And these activities are reasonably certain to result in the direct take of CRLF, which are relatively slow-moving and, during certain times of the year, stationary. CRLF forage in both riparian areas and upland areas during the April to November period of active timber operations. CRLFs are particularly susceptible to direct physical harm in upland areas during the dry season—the primary period for timber harvesting operations—when CRLFs commonly reside in mammal burrows. CRLFs, in adult and egg form, are also reasonably certain to exist in water drafting locations and locations where water crossings are constructed. CRLFs, including both adult and animals and in the egg stage, at the location of the logging operations are reasonably certain to go undetected under the Little THP's lax survey requirements, and thus are reasonably certain to be crushed and otherwise harmed by heavy equipment use and other activities that are part of the proposed logging.

89.     Given the variety of CRLF movement behaviors, CRLFs are reasonably certain to be taken—including through killing, harming, and harassing—without a 1-mile buffer radius around all aquatic habitats encompassed within the boundaries of the Little THP. A 1-mile buffer is not included as part of the logging proposed in the Little THP.

90.     GRT has not requested or received an incidental take permit for CRLFs from USFWS concerning the proposed logging.

91.     Unless enjoined as requested herein, Defendant's proposed logging operations are reasonably certain to result in the unlawful take of CRLFs in violation of 16 U.S.C. §§ 1533(d), 1538(a)(1)(B) & (G).

92.     Thus, the logging operations violate 16 U.S.C. §§ 1533(d), 1538(a)(1)(B) & (G).

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SECOND CLAIM FOR RELIEF
(Violation of § 9 of the ESA – Unauthorized Take of Northern California Steelhead)

93.     Plaintiff incorporates by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

94.     The logging operations are reasonably certain to significantly disrupt and impair essential NC steelhead behavioral patterns, including spawning, incubating, rearing, feeding, and sheltering, through significant habitat modification.

95.     The forms of habitat modification that are reasonably certain to cause take to NC steelhead include, but are not limited to: increased sedimentation in spawning and incubation gravels; loss of floodplain characteristics essential to salmonid rearing; impairments of estuarine habitat, including increased sediment, chemical nutrients, temperatures, and decreased oxygen; and the removal of riparian vegetation. These forms of habitat modification—which will occur in instream and estuarine habitats, from the site of the logging all the way to and including the estuary—are reasonably certain to cause take of NC steelhead by killing, injuring, harassing, or harming these species.

96.     The cumulative effects of the logging operations are reasonably certain to cause take of NC steelhead by killing, injuring, harassing, or harming these species.

97.     The proposed logging operations' impacts on NC steelhead include physical, chemical, and biological impairments to all freshwater stages of salmonid development. Increased sedimentation and temperatures, loss of important floodplain characteristics, impacts to aquatic insect forage, impairments to the Gualala estuary, and cumulative effects of the logging operations are reasonably certain to cause take of NC steelhead by killing, harming, or harassing members of this species.

98.     The Little THP states: "Gravel and substrate suitable for salmonids is limited in some streams and abundant in others." THP § IV, p. 155. The interstitial spaces between gravels provide critical housing for salmon eggs.

99.     Logging and its necessary road use increase land surface runoff and surface erosion processes, thereby increasing instream sediment inputs and stream channel entrenchment, and decreasing floodplain connectivity. Sediment deposition can impair instream spawning and incubation by filling interstitial spaces between gravels used for egg deposition and incubation, thus decreasing the availability of oxygen to incubating embryos, altering thermal regimes

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

influenced by groundwater, and eliminating off-channel and riparian habitats which serve as critical refugia during high flow events.

100.     Embryo survival decreases with increased sedimentation in spawning redds (gravel depressions where salmonids spawn). Suspended sediment generated from soil disturbance and erosion caused by logging on floodplains and other near-stream locations increases turbidity thereby decreasing the growth and survival of fishes.

101.     Mechanisms of impact caused by elevated suspended sediment include: alteration of behavior and reduced physiological health of juvenile steelhead; decreased productivity of stream and estuary food webs, which can deplete the aquatic food sources that support fish growth; and interference with visual foraging by salmonids, increasing feeding costs and reducing growth and ultimately survival.

102.     The Little THP makes clear that sedimentation is reasonably certain to occur. THP § IV, p. 144 (listing among "[t]he major biological impacts" of the proposed logging: "erosion of the soil with the resulting loss of forest productivity and the sedimentation of the watercourses affecting downstream fisheries and instream habitat for aquatic species").

103.     Vegetation removal and soil disturbance from logging activities are reasonably certain to increase sedimentation within the floodplain and reduce the floodplain's capacity to trap and stabilize sediments during flood events, resulting in increased sedimentation of the Gualala River.

104.     The Little THP acknowledges that the erosion hazard from the proposed logging will be variously high to moderate. THP § II, p. 15. Moreover, unstable areas in Unit 3 are especially reasonably certain to experience erosion. *See* THP § III, p. 104.

105.     Given the direct causal connection between sedimentation and harm to salmonids, including, without limitation, as laid out above, such sedimentation is reasonably certain to cause take of NC steelhead, including by killing, harming, and harassing members of this species.

106.     Natural floodplain processes and floodplain complexity are essential to the maintenance of salmon habitat. The natural flood-pulse disturbance regime of floodplain habitats maintains complexes of backwaters and spring channels that exhibit water velocities,

Gross & Klein LLP
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111

COMPLAINT

temperatures, and prey sources better suited than mainstem habitats for the growth of rearing juvenile salmonids. Multiple studies describe increased growth and abundance of juvenile salmonids on off-channel floodplain habitat, due to thermal refugia and increased productivity and prey.

107.    Both aquatic and terrestrial inputs of prey are important aspects of salmon growth in floodplain habitats. Because excessive sedimentation ultimately decreases floodplain and riparian connectivity, as well as the quality and productivity of those floodplain habitats, juvenile salmon growth may decrease, ultimately leading to decreased salmon survival at sea.  Moreover, removal of riparian vegetation is reasonably certain to increase stream temperature and decrease fish cover in floodplain habitats.

108.    The Little THP admits that these impacts are reasonably certain to occur. THP § IV, p. 144 (listing among "[t]he major biological impacts" of the proposed logging: "change of habitat for certain groups of species through the conversion of existing eighty to one-hundred-year-old timber stands to younger age classes").

109.    Furthermore, increasing temperatures from logging are reasonably certain to decrease suitable incubation and rearing area and salmon growth, while the loss of cover is reasonably certain to increase predation on rearing salmonids. These impacts are reasonably certain to cause take to NC steelhead, including by killing, harming, and harassing members of these species.

110.    Increased sediment, chemical nutrients, and temperatures, and decreased oxygen in the Gualala River estuary are reasonably certain outcomes of the logging operations along the Little North Fork of the Gualala River. These effects are, furthermore, reasonably certain to be exacerbated by recent timber harvests in steep and other highly erodible areas (including without limitation the Apple, Kestrel, Dogwood, and German South THPs), which already contribute to greater sediment yields to the Gualala River estuary.

111.    Estuaries are considered exceptionally valuable to salmon growth and smoltification, providing services including buffering of sediment transport, purifying water,

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

storing carbon and other nutrients, and buffering against sea-level rise and storm surges. The Gualala River estuary is known steelhead rearing habitat.

112.    Consequently, changes in estuarine habitat have significant implications for NC steelhead viability. Increased sediment, nutrients, and temperatures resulting from logging in the Gualala River and its estuary are reasonably certain to impair NC Steelhead feeding and growth for reasons described above regarding floodplain characteristics, thus resulting in the take of NC Steelhead.

113.    Moreover, increasing nutrient loads, including nitrogen, phosphorus, and dissolved and particulate carbon mobilized by logging disturbance of floodplain vegetation and soils will further lead to increased microbial oxygen demand, especially at night. This is reasonably certain to result in decreased dissolved oxygen levels in the estuary, which already approach hypoxic conditions at some times of the year. High temperatures and low dissolved oxygen are reasonably certain to become harmful or lethal to rearing and spawning NC Steelhead and their prey, resulting in the ongoing take of these animals.

114.    In a lagoonal northern California estuary, increasing water temperatures above bioenergetic optima is documented as causing decreased growth rates of juvenile steelhead, which can compromise ocean survival and successful reproduction.

115.    Thermal refugia within estuaries play an important role when temperatures increase, but estuarine complexity—including groundwater inputs that provide essential refugia—is reasonably certain to be reduced by increased sediment inputs.

116.    Excessive temperature increases additionally block migration and cause pre-spawn mortality of adult NC Steelhead migrating upstream to spawn. These impacts on the Gualala River estuary are reasonably certain to cause indirect take to NC steelhead, including by killing, harming, and harassing members of these species.

117.    Riparian vegetation removal called for as part of the logging operations—resulting in increased light and stream temperatures—and logging activities—resulting in increased sediment and nutrient inputs—are reasonably certain to cause cascading effects through aquatic

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

COMPLAINT

food webs that will negatively impact NC steelhead growth, survival, and reproduction, resulting in their indirect take.

118.    Algal and aquatic plant productivity are reasonably certain to increase substantially after logging, and homogenizing the macroinvertebrate communities upon which freshwater rearing NC steelhead salmon depend. Thus, the combined impacts of the logging operations in the Gualala River watershed are reasonably certain to decrease the viability of incubating eggs, decrease growth and survival of rearing salmonids, degrade spawning habitat, and cause pre-spawning mortality, thereby resulting in the take of these animals.

119.    Particularly considering the present extremely precarious state of NC steelhead in the riverine and estuarine habitat of the Gualala River ecosystem, the proposed logging's habitat modifications are reasonably certain to cause take of animals of this species.

120.    GRT has not requested or received an incidental take permit for NC steelhead from NMFS concerning the proposed logging in the Little THP.

121.    Unless enjoined as requested herein, Defendant's proposed logging operations are reasonably certain to result in the unlawful take of NC steelhead.

122.    Thus, the logging operations violate 16 U.S.C. §§ 1533(d), 1538(a)(1)(B) & (G).

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**THIRD CLAIM FOR RELIEF**
(Violation of § 9 of the ESA – Unauthorized Take of Central California Coast Coho)

123.    Plaintiff incorporates by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

124.    The logging operations are reasonably certain to significantly disrupt and impair essential CCC coho salmon behavioral patterns, including spawning, incubating, rearing, feeding, and sheltering, through significant habitat modification.

125.    The forms of habitat modification that are reasonably certain to cause take of CCC coho salmon include, but are not limited to: increased sedimentation in spawning and incubation gravels; loss of floodplain characteristics essential to salmonid rearing; impairments of estuarine habitat, including increased sediment, chemical nutrients, temperatures, and decreased oxygen;

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

and the removal of riparian vegetation. These forms of habitat modification are reasonably certain to cause take of CCC coho salmon by killing, injuring, harassing, or harming these species.

126.   The cumulative effects of the logging operations are reasonably certain to cause take of CCC coho salmon by killing, injuring, harassing, or harming these species.

127.   The proposed logging's impacts on CCC coho habitat would include physical, chemical, and biological impairments to all freshwater stages of salmonid development. Increased sedimentation, loss of important floodplain characteristics, impairments to the Gualala estuary, and cumulative effects of the logging operations are reasonably certain to cause take of CCC coho by killing, harming, or harassing members of this species.

128.   Logging and its necessary road use increase land surface runoff and surface erosion processes, thereby increasing instream sediment inputs and stream channel entrenchment, and decreasing floodplain connectivity. Sediment deposition can impair instream spawning and incubation by filling interstitial spaces between gravels used for egg deposition and incubation, thus decreasing the availability of oxygen to incubating embryos and altering thermal regimes influenced by groundwater.

129.   Embryo survival decreases with increased sedimentation in spawning redds (gravel depressions where salmonids spawn). Suspended sediment generated from soil disturbance and erosion caused by logging on floodplains and other near-stream locations can increase turbidity and decrease the growth and survival of fishes.

130.   Mechanisms of impact caused by elevated suspended sediment include: alteration of behavior and reduced physiological health of juvenile steelhead and coho salmon; decreased productivity of stream and estuary food webs, which can deplete the aquatic food sources that support fish growth; and interference with visual foraging by salmonids, increasing feeding costs and reducing growth.

131.   The Little THP makes clear that sedimentation is reasonably certain to occur. THP § IV, p. 144 (listing among "[t]he major biological impacts" of the proposed logging: "erosion of the soil with the resulting loss of forest productivity and the sedimentation of the watercourses affecting downstream fisheries and instream habitat for aquatic species").

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

COMPLAINT

132.    As discussed, the Little THP also concedes that the proposed logging's erosion hazard will be variously high to moderate. THP § II, p. 15. Moreover, "unstable areas" in Unit 3 are especially reasonably certain to experience erosion. *See* THP § III, p. 104.

133.    Vegetation removal and soil disturbance from logging activities are reasonably certain to increase sedimentation within the floodplain and reduce the floodplain's capacity to trap and stabilize sediments during flood events, resulting in increased sedimentation of the Gualala River.

134.    Given the direct causal connection between sedimentation and harm to salmonids, such sedimentation is reasonably certain to cause take of CCC coho, including by killing, harming, and harassing members of these species.

135.    Natural floodplain processes and floodplain complexity are essential to the maintenance of salmon habitat. The natural flood-pulse disturbance regime of floodplain habitats maintains complexes of backwaters and spring channels that exhibit water velocities, temperatures, and prey sources better suited than mainstem habitats for the growth of rearing juvenile salmonids. Multiple studies describe increased growth and abundance of juvenile salmonids on off-channel floodplain habitat, due to thermal refugia and increased productivity and prey.

136.    Both aquatic and terrestrial inputs of prey are important aspects of salmon growth in floodplain habitats. Because excessive sedimentation ultimately decreases floodplain and riparian connectivity, as well as the quality and productivity of those floodplain habitats, juvenile salmon growth may decrease, ultimately leading to decreased salmon survival at sea. Moreover, removal of riparian vegetation is reasonably certain to increase stream temperature and decrease fish cover in floodplain habitats.

137.    The Little THP admits that these impacts are reasonably certain to occur. THP § IV, p. 144 (listing among "[t]he major biological impacts" of the proposed logging: "change of habitat for certain groups of species through the conversion of existing eighty to one-hundred-year-old timber stands to younger age classes").

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

138.   Furthermore, increasing temperatures from logging are reasonably certain to decrease suitable rearing area and salmon growth, while loss of cover is reasonably certain to increase predation on rearing salmonids. These impacts are reasonably certain to cause take of CCC coho, including by killing, harming, and harassing members of these species.

139.   Increased sediment, chemical nutrients, and temperatures, and decreased oxygen in the Gualala River estuary are reasonably certain outcomes of the proposed logging. These effects are, furthermore, reasonably certain to be exacerbated by recent timber harvests in steep and other highly erodible areas (including without limitation the Apple, Kestrel, Dogwood, and German South THPs), which already contribute to greater sediment yields to the Gualala River estuary.

140.   Estuaries are considered exceptionally valuable to salmon growth and smoltification, providing services including buffering of sediment transport, purifying water, storing carbon and other nutrients, and buffering against sea-level rise and storm surges.  CCC coho must traverse the estuary at least twice to complete their life cycles.

141.   Consequently, changes in estuarine habitat have significant implications for salmon viability.  Increased sediment, nutrients, and temperatures resulting from the logging operations in the Gualala River and its estuary are reasonably certain to impair feeding and growth for reasons described above regarding floodplain characteristics, thus causing the take of CCC coho, including through the killing, harming, and harassment of members of this species.

142.   Moreover, increasing nutrient loads, including nitrogen, phosphorus, and dissolved and particulate carbon mobilized by logging disturbance of floodplain vegetation and soils will further lead to increased microbial oxygen demand, especially at night. This will result in decreased dissolved oxygen levels in the estuary, which already approach hypoxic conditions at some times of the year. High temperatures and low dissolved oxygen are reasonably certain to become harmful or lethal to rearing and spawning CCC coho and their prey, resulting in the take of these animals.

143.   Thermal refugia within estuaries play an important role when temperatures increase, but estuarine complexity—including groundwater inputs that provide essential refugia—is reasonably certain to be reduced by increased sediment inputs.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

COMPLAINT

144.    Excessive temperature increases additionally block migration and cause pre-spawn mortality of adult CCC coho migrating upstream to spawn. These impacts on the Gualala River estuary are reasonably certain to cause take to CCC coho, including by killing, harming, and harassing members of these species.

145.    Riparian vegetation removal called for as part of the proposed logging—resulting in increased light and stream temperatures, and logging activities—resulting in increased sediment and nutrient inputs, are reasonably certain to cause cascading effects through aquatic food webs that will negatively CCC coho growth, survival, and reproduction, resulting in their take.

146.    Algal and aquatic plant productivity are reasonably certain to increase substantially after logging, and homogenizing the macroinvertebrate communities upon which freshwater rearing CCC coho salmon depend. Thus, the combined impacts of the logging operations in the Gualala River watershed are reasonably certain to decrease the viability of incubating eggs, decrease growth and survival of rearing salmonids, degrade spawning habitat, and cause pre-spawning mortality, thereby resulting in the take of these animals.

147.    Particularly considering the present extremely precarious state of CCC coho in the riverine and estuarine habitat of the Gualala River ecosystem, the proposed logging's habitat modifications are reasonably certain to cause take of animals of this species.

148.    GRT has not requested or received an incidental take permit for CCC coho from NMFS concerning the proposed logging.

149.    Unless enjoined as requested herein, Defendant's proposed logging operations are reasonably certain to result in the unlawful take of CCC coho salmon.

150.    Thus, the logging operations violate 16 U.S.C. §§ 1533(d), 1538(a)(1)(B) & (G).

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and further relief as follows:

1.    This Court declare that Defendant's planned logging operations will violate the ESA by conducting logging activities that modify, degrade, and destroy critical habitat of the

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

COMPLAINT

Gualala Listed Animals, thereby causing illegal "take" of said species, unless Defendant lawfully obtains Incidental Take Permits for each of the Gualala Listed Animals;

2.      This Court enjoin Defendant from engaging in or continuing the logging operations until and unless Defendant lawfully obtains Incidental Take Permits for each of the Gualala Listed Animal;

3.      This Court issue an order, in the event that the proposed logging is allowed to commence, for Defendant to mitigate and prevent ongoing harm to the Gualala Listed Animals and their habitat caused by the logging operations as alleged herein, including, without limitation, by:

    a. Creating off-site habitat reservations for the Gualala Listed Animals to compensate for the damage Defendant has caused and will continue to cause to their habitat within the Little area;

    b. Restricting any future and further logging activities in the relevant area;

    c. Creating a fund devoted to conservation efforts for the Gualala Listed Animals, including habitat restoration;

    d. Taking specific action to remedy and/or mitigate the mechanisms of take alleged herein, including, without limitation, by:

        i. implementing all practicable measures to prevent further sedimentation of the Gualala River watershed;

        ii. replacing lost large woody debris to provide salmonid habitat;

        iii. taking measures to increase shading of the Gualala River watershed;

        iv. taking measures to reduce nutrient loading of the Gualala River watershed;

        v. taking measures to increase water available for the Gualala Listed Animals in the Gualala River watershed;

        vi. restricting all logging and post-logging operations amidst all suitable CRLF habitat;

        vii. introducing stringent biologist survey protocols to locate and remove CRLF from the area of logging operations;

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

COMPLAINT

1    4.  This Court award costs of suit herein, including attorney fees, including without

2 limitation pursuant to the ESA or other authority; and

3    5.  This Court grant such other and further equitable or legal relief as the Court deems

4 just and proper.

5 Dated:  January 14, 2022     **GROSS & KLEIN LLP**

6

7         By: */s/ Stuart G. Gross*
            STUART G. GROSS

8

9          *Attorney for Plaintiff*

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

COMPLAINT