UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRIENDS OF GUALALA RIVER,<br><br>                Plaintiff,<br><br>    v.<br><br>GUALALA REDWOOD TIMBER, LLC,<br><br>                Defendant. | Case No. 22-cv-00317-VC<br><br>**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 10 |

       Plaintiff Friends of Gualala River moves to enjoin the Gualala Redwood Timber company from harvesting trees on its property, invoking the Endangered Species Act.[1] To obtain a preliminary injunction, a plaintiff must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). When it comes to cases arising under the Endangered Species Act, "the equities and public interest factors always tip in favor of the protected species." *Cottonwood Environmental Law Center v. United States Forest Service*, 789 F.3d 1075, 1091 (9th Cir. 2015).

       The Act permits private parties to "enjoin private activities that are reasonably certain to harm a protected species." *Sierra Club v. Babbitt*, 65 F.3d 1502, 1512 (9th Cir. 1995). A plaintiff need not show that a species faces "an extinction-level threat" to obtain an injunction. *National*

---

[1] The Court benefited immeasurably by visiting the physical site where harvesting is set to occur. But as explained at the hearing, the findings in this order are based solely on the record evidence submitted as part of the motion for a preliminary injunction.

*Wildlife Federation v. National Marine Fisheries Service*, 886 F.3d 803, 819 (9th Cir. 2018). But Ninth Circuit precedent requires that there be a "definitive threat of future harm to protected species, not mere speculation." *National Wildlife Federation v. Burlington Northern R.R., Inc.*, 23 F.3d 1508, 1512 n.8 (9th Cir. 1994).

      1. *The California Red-Legged Frog*. From the evidence presented, it does not appear likely that the logging activities will harm the California Red-Legged Frog.

      First, the record evidence does not definitively establish that the frog is currently in harm's way. There is evidence that one frog was spotted in the harvesting zone. Although no expert confirmed that the frog identified was, in fact, a California Red-Legged Frog (the plaintiff's expert characterized the discovery as a "supposed Red-legged Frog sighting") it is fair to assume for these purposes that it was. On the other hand, the record suggests that few (if any) Red-Legged Frogs are currently present in the harvesting zone. The wet areas designated as "potential frog habitat" are not confirmed frog habitat. A DNA-sampling study has detected evidence of the frog in the greater Gualala watershed, but it did not identify frog DNA in the places set to be harvested. And Mark Jennings, an expert for Gualala Redwood Timber and a regarded authority on the frog, explains that there is a "potential presence of only very limited numbers" of the frog in the Little THP area.

      Second, even assuming that some frogs are present, it does not appear likely that the logging activities would injure any frogs or harm frog habitat. The Little THP erects a buffer around the designated frog habitats, demarcating a 30-foot no-cut zone during drier summer months and a 300-foot no-cut zone during wetter winter months. As Jennings explains, the frog "cannot be expected to venture far" from wet areas during the summer months, which is when Gualala Redwood Timber plans to harvest. And the plan calls for barriers and fencing to prevent frogs from wandering into roadways and trails trafficked by heavy machinery and felled trees. Additional protective measures, like a "stop work" order should any frog be observed, offer still more reasons to think that the harvesting operations are not likely to injure the protected frogs.

      Beyond the substantive considerations above, multiple California agencies have

reviewed, assessed, and approved the Little THP. The California Department of Forestry and Fire Protection (Cal Fire) must greenlight timber harvesting plans. *Friends of Gualala River v. Gualala Redwood Timber, LLC*, 552 F.Supp.3d 924, 935 (N.D. Cal. 2021). And the State's regulations prohibit Cal Fire from approving a timber harvesting plan that would "take" or "cause significant, long-term damage" to a listed species. 14 Cal. Code Regs. § 898.2(d). Although this Court owes no formal deference to Cal Fire's conclusion about the Little THP, its findings remain a persuasive part of the record.

Sarah Kupferberg, an expert for the Friends of Gualala River, argues that the mitigation measures in the Little THP are inadequate. For instance, she contends that 30-foot no-cut buffer zones will not protect the frog because some studies suggest the frog could move greater distances than 30 feet from its main habitat, even during the warmer summer months. But even crediting the possibility that the frog, if present, might move more than 30 feet during the summer harvesting period, it requires a series of uncertain leaps to conclude that the harvesting operations will injure the frog or its habitat. The Little THP incorporates additional mitigation measures besides buffer zones. And the operation does not call for clear-cutting: the planned harvest is limited in scope, affecting just a small percentage of trees per acre in the Little THP area.

The take mechanisms suggested by Friends of Gualala River are plausible, to be sure. Given the use of heavy machinery and the presence of falling trees, it seems possible that Gualala River Timber's operations in the Little THP will hurt the frog. But the plaintiff's evidence is speculative; it is not strong enough to conclude that harm to the frog is likely (much less "reasonably certain"). Given record evidence casting doubt on the frog's presence, the mitigation measures adopted by Gualala River Timber to protect the frogs and their habitat, and the thorough and voluminous review conducted by California's agencies, the Court is not persuaded that a preliminary injunction is warranted with respect to the frog.

2. *Coho Salmon and Steelhead*. Just as uncertainty lingers as to whether the frog is in the

Little THP area, the same goes for the fish, and particularly for the Coho.[2] But even assuming that some Coho or Steelhead are present, it does not appear likely, from this record, that the harvesting operations will harm the fish or their habitats.

The Little THP incorporates mitigation measures to reduce sediment washing into the river and to prevent canopy reduction in the forest. Just as buffer zones exist around presumed frog habitat, the Little THP creates buffer zones around main water channels that might harbor Coho or Steelhead. No harvesting may occur within 30 feet of the main river that runs through the Little THP. And only limited harvesting may occur within 120 feet of the river, reducing the potential for sediment to wash into the waterway. Gualala Redwood Timber also plans to use existing paths—called skid trails—to drag felled trees, minimizing erosion on the forest floor. As for canopy cover, the Little THP targets 80% canopy retention in the areas closest to the stream, reducing the chance that increased sunlight will raise stream temperatures and render the waterways uninhabitable for the fish.

Just as Cal Fire reviewed the Little THP to analyze whether the harvesting operations would injure the frog, the State's agencies also assessed the potential impact on the fish. Part of that process involved a review by the National Marine Fisheries Service, which walked through Gualala Redwood Timber's planned mitigation measures, noting that they were likely to reduce deleterious impacts on fish populations and habitat. The Service's conclusions and the State's review provide more reasons to doubt that an injunction is warranted.

Friends of Gualala River argues that by conducting harvesting operations, the Gualala Redwood Timber company is preventing the natural creation of alternative waterways—

---

[2] Some environmental surveys and historical studies suggest that the Coho are present in the Little THP area. And the plaintiff's expert, Christopher Frissell, is "reasonably confident" that Coho are present in the North Fork of the Gualala River, which runs through the Little THP area. But a map of DNA detections in the watershed shows Coho only where the river meets the ocean, and not specifically in the area where harvesting is set to occur. As for Steelhead, the same DNA-detection map shows a cluster of observations where the river meets the ocean, but it does identify one detection much closer to the Little THP area. And snorkel survey detections have identified Steelhead in the river running through the harvesting territory. As the plaintiff concedes, it is more likely that Steelhead are present in the Little THP area compared to Coho.

waterways that could be more hospitable to Coho and Steelhead than the current river running through the watershed. This seems plausible, even if speculative. But more to the point, the record suggests that the company's activities are not likely to harm the Coho and Steelhead in the environment that exists today.

The motion for a preliminary injunction is denied.

**IT IS SO ORDERED.**

Dated: June 17, 2022

VINCE CHHABRIA
United States District Judge